## THOMAS M. NICHOLSON

### *vs.*

## MAINE CENTRAL RAILROAD COMPANY.

### Hancock.    Opinion December 4, 1902.

*Railroads.   Filing and Recording Location.   Commissioner's Court.   Ratification.*
*R. S., c. 51, § 4.   Special Laws, 1870, c. 359; 1873, c. 232.*

*Held;* that the recorded location of the Bucksport and Bangor Railroad in 1873, is a substantial and sufficient compliance with the requirements of the statute in force at that time.

This location was unquestionably filed with the county commissioners "within the time and substantially according to the description in the charter," and this identical location is distinctly shown by the express terms of the recorded certificate of the clerk of courts appended to the record of the location to have been "approved by the county commissioners and ordered to be recorded March 18, 1873," as of the "January Adj. Term, 1873."

No reason has been assigned for impeaching the clerk's record or questioning the accuracy of the date of that record. The location itself, when originally filed, may have been without date and in that condition approved and recorded March 18, 1873; and it is not improbable that when the absence of the date was subsequently discovered, the deficiency was supplied as of that time, and the entry of "April 7, 1873" made upon the record without observing the date of the record in the clerk's certificate. But however this discrepancy in the dates may have been occasioned, the fact remains that the location spread upon the pages of the county commissioners' records was approved and recorded March 18, 1873. There is no suggestion of the existence of any different location to which the clerk's certificate of approval could possibly relate.

It is immaterial whether this location bore any date or not when originally filed. It must have been filed before it was approved by the county commissioners, and the subsequent insertion of an erroneous date by mistake cannot change the fact that this particular location of the defendant's railroad in the County of Hancock was filed, approved and recorded long prior to December 31, 1874, the time fixed in the amended charter. And this was all the law required.

If the president's communication accompanying the act of filing the location, stating that he was acting by authority of the board of directors of the railroad company, is not sufficient evidence of his authority, the acquiescence of that and subsequent boards in this act of the president, for a period of nearly thirty years must be accepted as satisfactory evidence of their approbation and ratification of it. It is not open to the plaintiff to make this objection.

The board of county commissioners is a court having a recording officer whose duty it is to register its decrees, and the attestation of the clerk is all that is necessary to give validity to the record of its transactions and judgments. The record was legally and properly made. There is no law requiring the signatures of the members of the board to be subscribed to their judgments or appended to their records.

On motion and exceptions by defendant.    Exceptions sustained.

This was a real action brought by T. M. Nicholson against the Maine Central R. R. Company to recover certain real estate situated in the town of Bucksport, and claimed by that company as part of its right of way. The defense was the general issue with a brief statement claiming a strip of land six rods wide, three rods on either side of a certain line described, commencing at Long Wharf in Bucksport village running across the lot described in plaintiff writ, in all 250 feet. This strip of land the defendant claims under and by virtue of the location duly made by the Bucksport & Bangor R. R. Co. in the year 1873. The defendant claimed through several

railroad companies by leases, all of which were admitted. The defendant further claimed that for a period of more, than twenty years, it and its predecessors in title have occupied it continually so as to gain title to said property and land, or a portion of it, by adverse possession.

The case appears in the opinion.

*O. F. Fellows* and *O. P. Cunningham*, for plaintiff.

*C. F. Woodard*, for defendant.

SITTING: WHITEHOUSE, POWERS, PEABODY, SPEAR, JJ.

WHITEHOUSE, J.    This is a real action in which the plaintiff seeks to establish his ownership and right to the possession of a strip of land in Bucksport, six rods wide, included in the original location of the railroad operated by the defendant company.

It was not controverted that the plaintiff was entitled to judgment establishing his title to the fee in the land in question, but it was contended that the plaintiff was not entitled to have judgment and execution that would exclude the defendant from possession and control of the premises for all purposes involved in the exercise of its corporate franchise. The defendant claimed, in the first place, that it obtained an easement in the land for railroad purposes by virtue of a legal location of its roads under a charter, over a strip six rods in width; and secondly, the defendant contended that if its location was not legal and sufficient, it had acquired such easement by prescription over that portion of the strip actually occupied for railroad purposes by virtue of an exclusive, uninterrupted and adverse possession for a term of twenty years.

In his charge to the jury the presiding justice gave the following instruction respecting the question of the defendant's location: "I instruct you for the purpose of this trial that the location as filed and the proceedings of the railroad, the predecessor of the Maine Central, the original Bangor and Bucksport road, that condemned or attempted to condemn this land, were insufficient." Thereupon the trial proceeded upon the question of an easement by prescription, and the jury returned a general verdict in favor of the plaintiff, with a

special finding that the defendant company and its predecessors in title had not acquired an easement by prescription for its railroad purposes over any portion of the demanded premises.

The case comes to this court on the defendant's exceptions to the ruling of the presiding justice respecting the validity of its location, and a motion to set aside the special verdict as against the evidence.

It is admitted that the railroad company, known in 1873 as the Bucksport and Bangor Railroad, was first incorporated under the name of the Penobscot and Union River Railroad Company by act of the legislature approved March 1st, 1870; that by chapter 232 of the Private Acts of 1873 the title of the Penobscot and Union River Railroad Company was changed to the Bucksport and Bangor Railroad Company; that Nov. 10, 1873, the Bucksport and Bangor Railroad Company executed a mortgage to trustees to secure its bonded indebtedness; that on the 28th day of February, 1882, the mortgage having been duly foreclosed, the bondholders organized as a corporation under the name of the Eastern Maine Railroad Company, and that this last named corporation thereby acquired all the rights previously enjoyed by the Bucksport and Bangor Railroad Company; that the Eastern Maine Railroad Company executed a lease of its road, and all rights thereto pertaining, to the Maine Central Railroad Company which has had possession of the property under its lease from that date to the present time.

It is not in controversy, therefore, that if the location made by the Bucksport and Bangor Railroad Company was legal and sufficient, all rights thereunder finally passed to the defendant company by virtue of the transactions above stated.

For the purpose of showing a location of the Bucksport and Bangor Railroad Company in the County of Hancock, and across the plaintiff's land in question, the defendant introduced a certified copy of the record of the court of county commissioners for that county bearing date March 18, 1873, purporting to be the record of such a location filed April 7, 1873.

By chapter 232 of the Private Acts of 1873 the time for making the location of the railroad specified in the original charter of 1870, was extended to December 31, 1874. It is not in controversy there-

fore that a location appears from this record to have been seasonably filed.

The law in force at the time the location appears from this record to have been filed with the county commissioners as well as at the time it appears to have been approved by that court and recorded, is to be found in the Revised Statutes of 1871, chapter 51, section 4, and is as follows: "The railroad is to be located within the time and substantially according to the description in the charter; and the location is to be filed with the county commissioners, approved by them and recorded."

The copy of the record introduced comprises a detailed report of "Parker Spofford, Engineer" in manner following: "To the county commissioners of the county of Hancock in the state of Maine: The Bucksport and Bangor Railroad Company beg leave to file, in the county of Hancock, before the commissioners of said county, the location of a portion of the railroad in said county, the width of the right of way being six rods, and the center line of which is as follows: Beginning at a stake thirty-three (33) feet from the northeast corner and in line with the east side of the so-called 'Long Wharf' in the town of Bucksport, and running to the north line of the county by the straight lines and curves shown in the following notes of alignment." The specifications of sixty-seven different measurements are then inserted with the length of the straight lines given in feet with the "bearing of the same," and the length of each curve and the radius of the curve given in feet. As recorded, the report bears date April 7, 1873. The following communication signed by "Sewall B. Swazey, Pres't B. & B. R. R. Co.", then appears as a part of the record:

"The directors of the Bucksport and Bangor Railroad Company, having accepted and approved of the above location of their road in the county of Hancock in the state of Maine, direct me to present the same to the commissioners of said county for their approval and to be put on record." This bears date "Bucksport, April 7, 1873."

The record is then authenticated by the following certificate signed by the clerk:

"Court of County Commissioners. Hancock, ss. January Adj. Term, 1873.

"The county commissioners having approved the above location of the Bucksport and Bangor Railroad, order the same to be entered of record. Approved by the county commissioners and ordered to be recorded March 18, 1873.

Attest, H. B. Saunders, Clerk."

The principal objection which the plaintiff interposes to this location is, that according to the record it appears to have been approved by the county commissioners before it was filed in court; and it is true, as has been seen, that the location appears from the record to have been approved by the board of county commissioners March 17, 1873, while the statement from the president of the company that it had accepted and approved this location bears date April 7, 1873.

For the purpose of showing that this apparent anachronism was only the result of a clerical error, the defendant offered what appears to be a duplicate of the location recorded, except that it bears only the date "A. D. 1873" on the report of Parker Spofford, and "Bucksport . . . . 1873" on the communication from President Swazey. In each place a blank space is left for the date of the month. But the evidence fails to show in whose handwriting this "duplicate" appears to be, or whether it was the original location or a copy. It appears to have been found among the papers of the county commissioners in the custody of the clerk, in a wrapper marked in the handwriting of the present clerk of courts, "Location of Bucksport and Bangor Railroad;"' but it is not attested as a copy, nor in any way authenticated as an original paper by the clerk of courts in office at that time. Such a document in no way certified by the proper officer, cannot be deemed competent evidence to explain the discrepancy in the date of filing a location duly recorded and properly certified by the clerk in office at the time the record was made.

It is the opinion of the court, however, that without the aid of such explanation the recorded location above described is a substantial and sufficient compliance with the requirements of the statute in force at that time. This location was unquestionably filed with the

county commissioners "within the time and substantially according to the description in the charter," and this identical location is distinctly shown by the express terms of the recorded certificate of the clerk of courts appended to the record of the location to have been "approved by the county commissioners and ordered to be recorded March 18, 1873," as of the "January Adj. Term, 1873." No reason has been assigned for impeaching the clerk's record or questioning the accuracy of the date of that record. The location itself, when originally filed, may have been without date and in that condition approved and recorded March 18, 1873; and it is not improbable that when the absence of the date was subsequently discovered the deficiency was supplied as of that time, and the entry of "April 7, 1873" made upon the record without observing the date of the record in the clerk's certificate. But however this discrepancy in the dates may have been occasioned, the fact remains that the location spread upon the pages of the county commissioners' records was approved and recorded March 18, 1873. There is no suggestion of the existence of any different location to which the clerk's certificate of approval could possibly relate. It is immaterial whether this location bore any date or not when originally filed. It must have been filed before it was approved by the county commissioners, and the subsequent insertion of an erroneous date by mistake cannot change the fact that this particular location of the defendant's railroad in the County of Hancock was filed, approved and recorded long prior to December 31, 1874, the time fixed in the amended charter. And this was all the law required.

The other reasons suggested for questioning the validity of the location are evidently not relied upon by the plaintiff. The objection that the president of the corporation is not shown by competent evidence to have been duly empowered to act for the corporation in filing the location with the county commissioners, cannot be sustained for obvious reasons. If the president's communication accompanying the act of filing the location, stating that he was acting by authority of the board of directors of the defendant company, is not sufficient evidence of his authority, the acquiescence of that and subsequent boards in this act of the president, for a period of nearly thirty

years must be accepted as satisfactory evidence of their approbation and ratification of it.   It is not open to the plaintiff to make this objection.

The further objection that the approval of the location by the county commissioners was not signed by the different members of the board, is also untenable.   The board of county commissioners is a court (*Chapman* v. *County Commissioners,* 79 Maine, 269) having a recording officer whose duty it is to register its decrees, and the attestation of the clerk is all that is necessary to give validity to the record of its transactions and judgments.   As stated above, the certified copy of the record of the location in this case shows that the act of the court of county commissioners in approving the location, was duly attested by "H. B. Saunders, Clerk."   The record was thus legally and properly made.   There is no law requiring the signatures of the members of the board to be subscribed to their judgments or appended to their records.

The ruling of the presiding justice that the "location as filed" is insufficient must accordingly be held erroneous.

Whether any part of the right of way secured by this location over the land now owned by the plaintiff has been voluntarily abandoned by the defendant company, is a question not now before the court.

*Exceptions sustained.*